# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| v. | ) | |
| TARIQ ALI, | ) | No. 05 CR 936 |
| | ) | Judge Hibbler |
| Defendant. | ) | Magistrate Judge Cole |

## MEMORANDUM OPINION

On November 16, 2005, Mr. Ali was charged in a two-count indictment having made a threat concerning an alleged attempt to be made to kill and injure himself and others in violation of 18 U.S.C. §844(e) and with having caused to be delivered by the U.S. Postal Service to the Chicago Transit Authority a letter containing a threat to injure himself and others by committing a "suicide bombing" in violation of 18 U.S.C. §876(c). On November 17, 2005, the government, pre-trial services, and the defendant and his counsel appeared and all joined in a request that Mr. Ali be released on a $4,500 OR bond. The request was, to say the least, mystifying since pre-trial services had not completed its interview, and the government provided me with no information about Mr. Ali's ties to the community, employment or any other information relevant under the Bail Reform Act.

Upon questioning, the Assistant United States Attorney represented that the government was not asking for bond since it did not feel that it could, consistent with its obligations to the court, make such a recommendation. The government pointed to the fact that the crime charged had occurred in April 2004, from which I inferred that Mr. Ali's behavior in the intervening 18 months had been uneventful. Yet, when I told the government this, the Assistant United States Attorney said she could not represent that to be true. Upon further questioning, it turned out that Mr. Ali had made a series of additional threats to other people as recently as the Summer of 2005 and had been expelled from Northeastern University as a consequence of these threats. Additional questioning, which should never have been necessary, revealed that Mr. Ali had essentially no ties to the community, had been unemployed for months, and other details that caused me substantial concern over not only the risk of flight, but danger to the community.

While I allowed Mr. Ali to be released on the recommended $4,500 bond suggested by the

government and pre-trial services, I instructed the government to be prepared to provide me with the information regarding any post-indictment threats or misconduct of which it had knowledge. On November 18, 2005, the bond hearing resumed, and the government provided me with what I marked as Court's Exhibits 1, 2 and 3. Exhibit 1 was the actual threat letter. Not only did the letter threaten suicide bombing, but any fair reading of it revealed what appeared to be a significant mental instability. Exhibit 2 was a transcript of recorded threats Mr. Ali had made to people at the University in April 2005. These threats were, to say the least, extraordinarily disconcerting and confirmed Mr. Ali's lack of impulse control and instability. Exhibit 3 was composed of a number of additional threatening letters and emails.

The government could offer no principled or persuasive reason why these documents were not disclosed yesterday and were only disclosed after I made pointed inquiry. The government's position was that while they were concerned about the continued course of conduct exhibited by Mr. Ali, he had not acted on any of the threats and thus, he was not a danger. Despite the absence of any meaningful ties to the Northern District of Illinois, the government insisted that Mr. Ali was not a flight risk. The crime with which Mr. Ali is charged is a crime of violence within the meaning of the Act and thus, there is a rebuttable presumption against bond.

For the reasons discussed below, neither the government – which is in the unusual position of virtually seeking bond for Mr. Ali – nor the defendant – who has the burden of rebutting the presumption – has offered evidence to overcome the presumption. Indeed, the government's position in this case is odd to say the very least. Section 3142(f)(1)(a) of the Bail Reform Act provides that a detention hearing shall be held upon motion of the attorney for the government in a case that involves a crime of violence. The Bail Reform Act defines crime of violence as an offense that has an element of the offence the use, attempted use or threatened use of physical force against the person or property of another. 18 U.S.C. §3156(a)(4). The crime involved in this case involves a threat by the defendant that if he was not hired by the CTA within seven days, that he would commit suicide "and . . . I might carry out a suicide bombing." (Court's Exhibit 1). Not only did the government did not ask for a detention hearing, it vigorously opposed detention.

## A.

Consistent with the most fundamental principles on which this Nation is based, the Bail Reform Act's overriding preference for liberty ensures that pretrial detention will occur only in the rarest of circumstances. *Hamilton v. Lyons*, 74 F.3d 99, 105 (5th Cir. 1996)("Due to weighty liberty interests, the typical pretrial detainee is rarely detained prior to trial."). "Release should be denied only in rare circumstances, and doubts regarding the propriety of release should be resolved in the defendants favor." *Accord United States v. Barnett*, 986 F.Supp. 385, 392 (W.D. La. 1997)("Release should be denied only in rare circumstances, and doubts regarding the propriety of release should be resolved in the defendants favor.")(collecting cases).

As the Supreme Court has stressed, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Act "carefully limits the circumstances under which detention may be sought to the most serious crimes." Id. at 747. Thus, "[t]here can be no doubt that the Act clearly favors nondetention." *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992). *Accord United States v. Barnett*, 986 F.Supp. 385, 392 (W.D. La. 1997). The preference for release accounts for Section 3142(e)'s "require[ment that] the judge...consider the possibility of less restrictive alternatives to detention." *United States v. Infelise*, 934 F.2d 103, 105 (7th Cir. 1991)(Posner, J.). Indeed, "the wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention." *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

The fact that Mr. Ali is charged with a serious crime involving violence, thus invoking a presumption against bond, 18 U.S.C. 3142(e) and (f)(1)(D), does not inevitably preclude bond. Defendants charged with crimes of violence as well as crimes involving drug trafficking, are often granted bond. *United States v. Leonti*, 326 F.3d 1111, 1114 (9th Cir. 2003)(bond granted on charges of conspiracy to possess and distribute narcotics, money laundering, and interstate travel in aid of racketeering); *United States v. O'Dell*, 204 F.3d 829 (8th Cir. 2000)(prior to bond violation, bond granted on charges of drug distribution and money laundering).

3

To rebut the presumption, all that is required is the defendant present some evidence to the contrary. *United States v. O'Brien*, 895 F.2d 810, 815 (1st Cir. 1990); *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986); *United States v. Savides*, 658 F.Supp. 1399, 1406 (N.D.Ill. 1987). That evidentiary showing was satisfied in *Carbone* by the defendants' ties in the community, the posting of real property by others, and home confinement during the evening, 793 F.2d at 559. In *O'Brien*, it was satisfied by the conditions of electronic monitoring and the posting of real property. 895 F.2d at 816. Here, none of those factors exist.

Moreover, the DNA evidence about which the government belatedly informed the court is compelling evidence of Mr. Ali's guilt, notwithstanding his denial to the FBI when interviewed. Mr. Ali has been unemployed for months, has run up a $20,000 credit card debt knowing that he has no funds to pay the bills, and he has no ties to the community. Indeed, he has told pre-trial services that he has had a room mate for over a month and a half and claims not to know his last name. Over the course of the past several months, he has engaged in the most disturbing course of conduct directed against third parties. *See* Court Exhibits 2 and 3. The government has conceded that it is disturbed about this conduct (from the perspective of community safety) but that its concern is mitigated by the fact that he has not carried out any threats.

This position is indefensible as a matter of law and logic. Obviously, it cannot be that before the government (and society) can protect itself, a defendant is entitled to carry out one of his threats. *Compare Dennis v. United States*, 341 U.S. 494, 509 (1951)(it cannot be that before the government "may act, it must wait, until the putsch is about to be executed.").[1] Even in dog bite cases, there is no principle that a dog is entitled to the first bite. Known danger is not to be ignored. For all of the reasons discussed on

---

[1] When I asked the Assistant United States Attorney as a hypothetical whether a defendant who would continue to make threats on bond would not be a threat to the community merely because, hypothetically, he would not carry any of them out, her response was that she could not answer the question.

4

the record, and based on Court Exhibits 1, 2 and 3, I conclude that Mr. Ali must be detained.[2] Quite apart from the unrebutted presumption against bond in this case, when all the statutory factors relating to flight risk and danger to the community are considered, the preponderance of evidence is that Mr. Ali's presence cannot be assured by any set of conditions, and the evidence is clear and convincing that no condition or set of conditions will assure the safety of the community. 18 U.S.C. §3142(g); *United States v. Warneke*, 199 F.3d 906, 908 (7th Cir. 1999).[3]

Pre-trial services has come to an opposite conclusion. They are prepared, as is the government, to have Mr. Ali go to New York to live with his brother, Mohammad Abid, as a custodian. Presumably, the brother works, and Mr. Ali would be totally unsupervised during large portions of the day. More importantly, Mr. Abid has told pre-trial services that he would prefer that his brother not live with him because he lives with his wife in a one bedroom apartment. He also said that he would not want to jeopardize his lease by having somebody live in the apartment who is not on the lease. (*See* Pre-Trial Services report).

Mr. Abid has said that he will allow his brother to stay with him the first night, and then help him find an apartment. At the hearing earlier this afternoon, both the government and pre-trial services said that they would not recommend bond unless Mr. Ali had a custodian. That view apparently has changed although there is no explanation for the change. Despite its concerns about "possible mental health issues" – this is an astonishing understatement – pre-trial services still recommends release.[4]

---

[2] In light of the evidence that was belatedly produced, I am at a loss to understand how the government could have represented to me that it had been concluded at senior levels of the United States Attorneys office that it would have been inappropriate even to have asked me to detain Mr. Ali. The government insisted in today's hearing that there had been no intent to deceive the court, but it could give no reason for its unilateral determination that the evidence should not have been brought to the court's attention. The government's obligation in a criminal case is not that it shall win but that it shall see that justice is done. *Campbell v. United States*, 365 U.S. 85, 96 (1960). I am constrained to say that the government's handling of this matter does not comport with this standard. The government's unilateral decision not to provide the court with undeniably relevant information is very disturbing.

[3] Mr. Ali's family is in Pakistan and he comes from Pakistan. It also appears from a review of his passport that he has been able to travel either into or out of countries without his passport being stamped.

[4] The recommendation is made on the condition that Mr. Ali seek mental health assistance.

I am constrained to respectfully disagree with pre-trial services' recommendation. I hereby order Mr. Ali to be detained pending trial or further order by Judge Hibbler. At a minimum, Mr. Ali must have a mental health evaluation prior to any decision on release.

                                                              _____
                                                              UNITED STATES MAGISTRATE JUDGE

DATE: 11/18/05